Hall v. Hall.

SUSANNAH HALL, ADM'RIX, v. W. D. C. HALL AND OTHERS.

Subsequent purchasers and mortgagees of personal property, who are in possession of the property, are necessary parties to an action to foreclose a prior mortgage.

After the Act of February 5th, 1840, (and perhaps before,) regulating the duties of Probate Courts, and the settlement of successions, (Hart. Dig. p. 324,) it was not competent for the Judge of Probate, to execute an order for the sale of property of a succession, and reserve a lien for payment of the purchase money by process verbal and act of sale, in the mode which had been in use, (perhaps in some counties only,) under the adoption of the laws of Louisiana; and such a proceeding was held to be utterly void, in a suit by the administrator to enforce the lien, although it was alleged and proposed to be proved, that the judge acted by authority from the administrator, that the purchaser accepted the process verbal as his title to the property, thereby assenting to the lien reserved therein, and that the claimants under him had actual notice.

*Quere?* As to the plea of the statute of limitations, against a suit to enforce a prior mortgage, against persons who are in possession by subsequent mortgage or purchase from the prior mortgagor.

It seems that the rule which prevents one who has purchased property at an administrator's sale, from pleading in set-off a debt due him from the intestate, is subject to exceptions; where for example, the purchaser is sole creditor of the estate, or where the rights of purchasers under him are involved, and they allege facts which demand the interposition of a Court of Equity, &c.

Appeal from Brazoria. This suit was instituted on the 3rd of June, 1845, by the appellant against W. D. C. Hall, on a note and instrument claimed to be a mortgage or lien. The note was as follows:

"$9,645. Brazoria, 2nd December, 1840.

" Twelve months after date, we, or either of us, promise to " pay Susannah Hall, administratrix of the estate of William " S. Hall, deceased, or order, the sum of nine thousand six " hundred and forty-five dollars, being for negroes purchased " at an administrator's sale of said succession.

" WARREN D. C. HALL.
" EDWARD WALLER."

The instrument referred to as a mortgage or lien, and denominated a process verbal, was as follows:

Hall v. Hall.

" THE REPUBLIC OF TEXAS,⟩ Be it remembered that on this
" *County of Brazoria.* ⟩ the first day of December, in
" the year of our Lord one thousand eight hundred and forty,
" by virtue of an order of sale from the Hon. Probate Court
" for the county aforesaid, made at the October Term, 1840,
" I, William P. Scott, Chief Justice and *ex officio* Judge of
" Probate for said county, proceeded to sell at the Court house
" door of said county, within the hours prescribed by law,
" the following described negro slaves, belonging to the suc-
" cession of William S. Hall, deceased, upon a credit of twelve
" months, with bond and security and a lien on the slaves to
" secure the final payment. The terms of the sale having
" been previously declared by me, and the property having
" been previously advertised, according to law to be sold on
" that day, Warren D. C. Hall having bid for Scipio, aged
" about twenty-one years, the sum of seven hundred and fifty
" dollars," (and so on, including nineteen, and then as follows :)
" which bids amount in all, to the sum of nine thousand six
" hundred and forty-five dollars, and being severally the high-
" est bids offered for said slaves, they were serverally bid off
" to him for the prices named ; and the said Warren D. C.
" Hall having executed his bond with security, according to
" the terms of sale, payable twelve months after date, for the
" aforesaid sum of nine thousand six hundred and forty-five
" dollars ; now, therefore, be it known that I, William P.
" Scott, Judge of Probate as aforesaid, do hereby sell, trans-
" fer and convey unto the said Hall, his heirs and assigns, all
" the right, title and interest of the succession of said Wil-
" liam S. Hall, deceased, in and to the aforesaid slaves, subject
" to a lien on the slaves to secure the payment of the afore-
" said bond. Witness my hand and seal the date above written.
    " Witness :          WILLIAM P. SCOTT,
" E. M. PEASE.     [L. S.]     Chief Justice and *ex officio*
" THOS. R. ERWIN.          Probate Judge.
    "Filed in the office for record this 5th December, 1840.
    " Recorded, Book A, pages 398, 399.    Mat. B. Williamson,
" Deputy Clerk and Recorder."

The plaintiff alleged that W. D. C. Hall had sold some of the slaves and mortgaged others, and a writ of sequestration was obtained.

November 5th, 1846, the defendant's exception for want of parties was sustained, and leave granted plaintiff to amend, and cause continued. March 6th, 1847, the plaintiff amended by making Thomas F. McKinney, Samuel M. Williams, Henry H. Williams, Robert Mills, David G. Mills, and Julietta Hall, wife of Warren D. C. Hall, parties, as mortgagees and purchasers under Warren D. C. Hall.

At the Fall Term, 1848, plaintiff amended by alleging that the administration of the estate of her intestate was opened before the 1st day of February, 1840; that the sale of the said slaves, described in her petition, was made by William P. Scott, Chief Justice of Brazoria, for her and under her authority; that the process verbal or act of sale described in her original petition in which the lien or martgage was retained and reserved, was delivered to said defendant Hall as evidence of title acquired under the sale, at which he purchased the slaves described in the plaintiff's petition, and that said process verbal or act of sale was delivered to said defendant Hall, and that he accepted the same as his title subject to the terms thereof, and thereby consented that said slaves should remain mortgaged and incumbered for the security of the note sued on, &c.

Same Term plaintiff amended again, by alleging, specially as to each, that all of the defendants who were purchasers and mortgagees under W. D. C. Hall, "were fully informed "and had notice of your petitioner's lien or mortgage which "is described in her original and amended petitions," previous to the times, respectively, of making of the sales and mortgages.

The defendant Hall demurred; and alleged that the estate of said Wm. S. Hall was indebted to him in a large amount, exhibiting an account which was allowed by the administratrix and approved by the Chief Justice, for about $30,000, approved by Chief Justice, July 13th, 1841; that a large

portion of his claims were judgments, which were preferred to all other debts of the estate, except the expenses of administration and would exhaust the said estate; that he had several times cited the plaintiff to settle the estate, but that she failed to do it; that it would be oppressive to compel him to pay over such a large sum of money to one who would only receive it for his use, thereby driving him to a tedious and circuitous process to recover it back again; that he was ready to pay any part of the amount that on settlement should be adjudged to be payable by him; wherefore he prayed that the proceedings of the Probate Court might be ordered to be copied and sent up, and all parties to be cited to appear at the next Term, &c. To this plea, the Court below sustained a demurrer.

The other defendants pleaded severally, by demurring to the petition and amendments, on the ground that it did not appear therefrom that the defendant W. D. C. Hall "ever "executed and delivered to the plaintiff any deed of mortgage "or any deed or instrument of writing creating any lien or "mortgage on said slaves, &c., nor that the same was ever "recorded, nor that these defendants had notice thereof; that "said petition shows no cause of action against these defend- "ants," &c. They admitted, respectively, the sales and mortgages, and set them up. McKinney & Williams' mortgage was dated 3rd of February, 1842, and they denied notice. H. H. Williams claimed by purchase under a foreclosure of said mortgage, by deed dated 2nd September, 1845. Robert & D. G. Mills claimed by mortgage dated April 4th, 1843, and denied notice. They pleaded the statute of two years. Julietta Hall claimed under H. H. Williams; and she pleaded the statute of two years. These defendants all amended at the Fall Term, 1848, by pleading the statute of four years, counting down to the filing of the plaintiff's first amendment.

The Court overruled the exception of W. D. C. Hall; sustained exceptions to the special defence of the said W. D. C. Hall, in which he claimed a set-off; and to the pleas of the

66

statute of limitations, filed by the other defendants.    The exceptions of the defendants McKinney, S. M. Williams, H. H. Williams, R. & D. G Mills and Julietta Hall, to the petition and the first and second amendments were sustained; after which the plaintiff by leave of the Court, (the defendants excepting,) filed their third amendment, which averred notice; and the said defendants having renewed their exceptions, the same were overruled.

At the trial, the plaintiff offered the document, called a process verbal, in evidence, but it was rejected; and the plaintiff excepted.   "Plaintiff offered to prove by parol testimony that " the defendants Robert Mills & David G. Mills, Thomas F. " McKinney, Samuel M. Williams, H. H. Williams and Ju- " lietta Hall had actual notice, and knew that the plaintiff had " a lien or mortgage on the slaves described in petition, when " the mortgages and sales named in plaintiff's petition, were ex- " ecuted by said W. D. C. Hall to said other defendants; the " plaintiff offered to prove, also, by parol testimony that W. " D. C. Hall accepted said process verbal or act of sale, as " evidence of title;" which evidence the Court refused to receive; and the plaintiff excepted.   There was a verdict and judgment for the plaintiff against W. D. C. Hall for the amount of the note and interest; and in favor of the other defendants against the plaintiff.   Plaintiff appealed.

*Harris & Pease*, for appellant.   I. For the appellant it is contended, that the Court erred in sustaining the demurrer of the defendant Warren D. C. Hall, who declined to answer, because those to whom he had mortgaged a portion of this property a second time, and those to whom he had sold a portion of it, had not been made parties.   It may be remarked that if these subsequent mortgages and subsequent vendees had been proper parties, and had not been so made, Hall, the original defendant, had no right to demur or to complain on account of the omission.   His interest could not have been affected by a decision in their absence.   If he sold or mortgaged property

which had been previously mortgaged by him and had not been redeemed, he did so in his own wrong, and it would not be reasonable that he should be permitted to take advantage of his own wrong to render the cause more complicated and thus produce delay.

These subsequent purchasers and mortgagees, we contend, were not necessary parties. The plaintiff had never contracted with them and there was no privity between her and them.

It behooves no person, without being asked, to make them so; and least of all does it behove the original mortgagor. He need not be so tender of their interests; for their rights would not be affected by a decree in a suit to which they were not parties. (See Somax v. Hide, 2 Vern. 185; Draper v. Clarendon, Id. 518.) In recent cases, mortgagees have been allowed to forclose in the absence of subsequent incumbrancers. (See Calvert on Parties in Equity, 128–138, and the numerous cases there cited.)

II. It will be borne in mind, the petition alleges that Wm. P. Scott, as Chief Justice of Brazoria county and acting as the agent of the plaintiff, and under her authority, made this sale; and that Warren D. C. Hall became the purchaser of the slaves sold; that by the terms and conditions of the sale a lien was to be retained on the property sold, to secure the payment of the purchase money; that the said Scott made out and executed an act of sale or process verbal of the property sold, in which a lien or mortgage was retained accordingly; that this was recorded in the recorder's office at Brazoria county; that the said process verbal or act of sale was delivered to the said defendant Hall as evidence of title acquired under the sale at which he purchased said slaves; that he accepted the same as his title subject to the terms thereof, and thereby consented that the said slaves should remain mortgaged and incumbered for the security of the note sued on, &c. And the petition further alleges that all the subsequent incumbrancers, who were made parties, were fully informed and notified of the existence of said lien or mortgage. And it will be seen from

Hall v. Hall.

the bills of exceptions, that though the plaintiff offered to prove the truth of all these allegations, the Court refused to permit her to do so, upon the ground that the testimony was inadmissible; and that though the act of sale retaining the lien was executed and sealed by the vendor, and was duly recorded, and though the property was accepted under it by the vendee, with all its terms and conditions, and though the slaves have been held and their services appropriated for near ten years, still all this is inadequate to create a lien.

This decision goes to the extent that this is a contract binding on one side only; that the defendant Hall can at the same time claim under and against the contract; that he can enjoy its benefits without being subject to its burdens. Such a position is repugnant to reason and to the rules and analogies of the law. And to use the language of an eminent jurist (Chancellor Kent) this is a position "shocking to the common sense of justice."

The acceptance of the deed in this case acts as an estoppel to Hall, to deny its terms and conditions. (Murphy v. Burnett, 1 Law Reporter, 106: Fitch v. Baldwin, 17 Johns. R. 161; Allen v. Luckett, 3 J. J. Marsh. 164; Wilson v. Watkins, 3 Peters, 43; 12 Johns. R. 357; 1 Coke's Inst. 352 and note; 8 Cowen, 586; 14 Pick. 481.)

*Robinson & Crittenden*, for appellees. I. The rule as to the necessity of joining incumbrancers, has been often discussed and is well settled. The reasons of it are so fully explained in the decisions, that it will be necessary to do little more than cite a few authorities to show that the demurrer was properly sustained: 3 Johns. Ch. R. 459; 4 Id. 605; 6 Id. 450; 1 Ala. R. 598, 708 and cases cited; 2 Ala. R. 415; 1. Tuck. Com. 117; 2 Mad. Ch. 150; 2 Pow. 296; 12 Ves. 48.

II. The defendant W. D. C. Hall sets up, as a defence to this suit, that he is a creditor, to a large amount, of the estate represented by the plaintiff, and that his claim has been allowed by her, as administratrix, and approved by the Probate Judge,

A statement of the items, of which it consists, is annexed to his answer. Had nothing more been alleged, this would be an attempt to set off a debt due from the intestate, against a note payable to the administratrix. But the answer goes further and shows that this defendant is the principal, comparatively the sole creditor of the estate; that all other demands against it amount to a small sum; that he is entitled to a priority of payment over other creditors; that if the whole amount of the note sued on should be collected, the greater part of it would be held by the administratrix for his use and would have to be immediately refunded to him. He avers his readiness to pay so much of the note as may be required to be paid in order to settle the estate. He prays the Court to take jurisdiction of the whole matter; to determine the amount to be paid by him, and to close the estate. This answer, on the application of the plaintiff, was striken out, the defendant excepting to the decision of the Court.

It is manifestly oppressive to compel the payment of the whole amount of this note, if the payment is unnecessary. It is shown to be unnecessary by the facts stated in the answer, which are admitted to be true by the exceptions of the plaintiff, as these exceptions amount, in effect, to a demurrer. It is contrary to common justice and common sense that the defendant's property should be sold to collect money which is to be paid over to the defendant himself. In reality, he is his own creditor, though in law the plaintiff has a right of action on the note. This is a case of such hardship as, in some mode or other, would be relieved against, upon the application of the defendant; and it is conceived that the application is properly made by this answer. If the District Court could legally interfere at this stage of the proceedings, without driving the defendant to his injunction, after judgment rendered, it would be a course more direct and simple, and more consistent with full justice between the parties, than to force them to contest the matter in a subsequent litigation. If the District Court has jurisdiction over the whole subject, with power complete-

ly to adjust this controversy by a settlement of the estate, the facts of the case render such a course a higly proper one.

It is insisted that the District Court has such jurisdiction, and is compelled by law to exercise it.

The 15th Section of Art. 4th of the Constitution declares that "inferior tribunals shall be established in each county, "for appointing guardians, granting letters testamentary and "of administration; for settling the accounts of executors, ad-"ministrators and guardians, and for the transaction of busi-"ness appertaining to estates; and the District Courts shall "have original and appellate jurisdiction, and general control "over the said inferior tribunals, and original jurisdiction "and control over executors, administrators, guardians and "minors, under such regulations as may be prescribed by "law."

The only regulation which is "prescribed by law," in this matter, is contained in the 3rd Section of the Act to "organize the District Courts," approved May 11th, 1846, and this, after conferring upon the District Court "appellate jurisdiction and general control" over the Courts of Probate, provides that it shall have "original jurisdiction in probate mat-"ters, only in cases where the Judge or Clerk of Probate is "interested." This Section is a legislative construction of the meaning of the above clause of the Constitution. It recognizes the existence of the "original jurisdiction" of the District Court, while it attempts to limit it. Whatever power is conferred by this clause of the Constitution, is conferred absolutely. As to the extent of this power, it is conclusive. No authority is given to the Legislature to destroy or even to limit the jurisdiction of the District Court, but solely to regulate it, in other words, to point out the manner, in which it is to be exercised. The limitation of it to a particular case is, in effect, an annihilation of it. Instead of "regulating," the Legislature would destroy. This enactment is unconstitutional.

This Section of the Constitution gives to the District Court

" original and appellate jurisdiction " over what? Not over the inferior tribunal, for over that it has a " general control," given it in the same Section. Besides, it would be an inaccuracy of terms, to speak of a jurisdiction over a Court. Not over executors, administrators, guardians and minors, for there is an express provision as to its authority over them. The phrase indeed is senseless unless it be taken in connection with what precedes it, and be held to confer on the District Court an original jurisdiction, as to all matters of probate, co-extensive with that bestowed upon the inferior tribunal. The inference that such was the intention is irresistible upon observing that this original jurisdiction is conferred in the same breath with the appellate jurisdiction, which cannot be denied to extend to all matters which may arise in the inferior Court. The grant of the two stand side by side, and are necessarily equal in extent. To ascertain whether in any controversy, occurring in the Probate Court, the District Court would have original jurisdiction, we have only to ask, whether it has appellate jurisdiction.

This jurisdiction is precisely the same as the original jurisdiction of the Probate Court itself; because it is conferred by the same clause. It extends to the appointment of guardians; to the granting of letters testamentary and of administration; to settling the accounts of executors, administrators and guardians, and to the transaction of business appertaining to estates. There is no escape from this conclusion without denying that the Constitution confers certain powers upon the inferior Courts which it requires shall be created, and without denying that it gives to the District Court appellate jurisdiction to the same extent. These grants of power must stand or fall together.

As to any power of limitation or restriction of this original jurisdiction, the Legislature possesses it in no greater degree than in regard to the appellate jurisdiction of the District Court. As to either the Legislature may prescribe regulations. Suppose it had declared that an appeal should lie from the in-

ferior to the District Court, whenever the Judge or Clerk was interested, but in no other case, would not this have been unconstitutional?

This construction may be inconvenient, but if the law is plainly so written, the inconvenience must be disregarded. The infrequent Terms of the District Court, the usually crowded state of its docket, and the difficulties which would be encountered in applying its modes of proceeding to all the cases which properly fall within the cognizance of a Court of probate, will always prevent it from being made the ordinary resort for the settlement of probate business. The benefit of its jurisdiction will only be asked in those unusual cases, which, like the present, call for its more extended powers to determine the rights of parties.

But it may be said that the exercise of this original jurisdiction by the District Court is to be " under such regulations as may be prescribed by law," and that, until some regulation be prescribed, it cannot be exercised at all. Such is not the plain meaning of the Constitution. It declares that the District Court "shall" have original jurisdiction. Whenever the Legislature has organized the District Court its jurisdiction attaches. The Legislature may point out the manner in which it is to be exercised; but if it fails to do so by any regulation peculiar to this subject, the ordinary rules and practice of the Court must govern.

The Constitution of the United States provides that " the " Supreme Court shall have appellate jurisdiction, both as to " law and fact, with such exceptions, and under such regula- " tions, as the Congress shall make." Upon this clause the question has been presented, whether the appellate jurisdiction attached to the Supreme Court subject to be withdrawn and modified by Congress, or whether an Act of Congress was necessary to confer the jurisdiction upon the Court. After some conflict of opinion, it has been settled that if the judicial Act had created the Supreme Court, without defining or limiting its jurisdiction, it must have been considered as possessing

all the jurisdiction which the Constitution assigns to it.    The entire appellate jurisdiction, if Congress should make no exceptions or regulations, would attach to the Supreme Court. (3 Story's Com. 648 and cases cited.)

. The reasoning upon this question applies here, except so far as affected by the difference in the Constitutions of the United States and Texas ; the former giving to Congress a power to make "exceptions" as well as "regulations," while the latter gives no such authority to the Legislature.

In this case no peculiar regulations are needed to enable the District Court to act.    Its usual practice furnishes the means. It might issue its writ to the inferior Court to certify its proceedings and to send up all the papers of the succession ; it might require the plaintiff to file her accounts as administratrix in order that it might be seen by the Court what amount was required to be paid by the defendant Hall ; it might distribute this amount amongst those entitled to it, and finally settle the estate.

If the position be a correct one, that under the Constitution the District Court has original, to the same extent as appellate jurisdiction, in matters relating to estates, that Court has no option to take or refuse it.    If it be a proper forum, it is the right of the party to be heard, and it was error for the Court, to rule out the answer of the defendant Hall.

III. The parties, who are made defendants by the first amended petition of the plaintiff, filed pleas of the statute of limitations, which, upon the plaintiff's exceptions, were stricken out.    The point, as to the propriety of this decision, is presented by the bill of exceptions.    The ground taken by the plaintiff is that the plea is no sufficient answer to the suit.

The amended petition, represents that these defendants are in possession of the property.    The object of making them parties is to conclude them ; to destroy their rights, whatever they may be ; to deprive them of the possession of the property, and subject it to sale to satisfy the plaintiff's claim. The exceptions of the plaintiff to the plea of the statute as-

67

sume, and can only be sustained in the principle, that no lapse of time would give these parties protection; that they are out of the pale of the statute; that their possession can never, under any circumstances nor after any interval of time, become good against the plaintiff; that she can stand by for fifty years and see the property, which she claims to be subject to her lien, pass from hand to hand, by mortgage and sale, without taking any steps to assert her rights, and can then say to all purchasers and incumbrancers that, because her's is a mortgage, it is a sacred claim never to be prescribed; theirs a tortious possession deriving no strength from unlimited continuance.

These defendants deny the claim of the plaintiff, and say that they have held this property more than two and more than four years; that they have held it for a longer time than would give title to a mere possessor; that they have held it so long that any contract in writing made by the defendant Hall with the plaintiff, prior to their possession, would be barred by the statute.

It is not intended to be maintained that the term of two years would bar a mortgage, as between mortgagor and mortgagee, but only that, upon the principle of the cases cited, and innumerable others to the same effect, the possession of personal property for this length of time by a third person, claiming to hold discharged from the mortgage, is a bar to a suit against him by the mortgagee.

IV. The demurrers of the defendants, except W. D. C. Hall, were sustained, and the plaintiff has excepted to the opinion of the Court. The ground of the demurrer is that the petition does not allege that Hall ever signed, sealed or delivered any mortgage to the plaintiff, or ever executed any instrument having the effect to create a mortgage or lien. The omission of such an averment is a fatal defect, as to the defendants alleged to be in possession of the property; for they are brought in on the very ground of the existence of a mortgage.

The facts stated in the petition are that certain negroes

which belonged to the estate of Wm. S. Hall, the plaintiff's intestate, were purchased by W. D. C. Hall at a public sale of the property of said estate made at the Court House in Brazoria on the 1st day of December, 1840, by William P. Scott, Judge of Probate for said county, and a lien or mortgage was retained on said negroes to secure the payment of the debt, as will more fully appear by reference to the process verbal and act of sale executed by said William P. Scott, Judge as aforesaid, in favor of said W. D. C. Hall, which was delivered to said W. D. C. Hall and is recorded in the Recorder's office of Brazoria county.

This statement, it will be perceived, contains no allegation that Hall executed a mortgage, nor that it was recorded, (both which allegations are material to make out the case,) but only that the Probate Judge retained a mortgage or lien in the process verbal and act of sale to which reference is made, and that this instrument was recorded.

Could a mortgage or lien be so created and would these defendants be bound by it?

"A process verbal is a true relation in writing, in due form "of law, of what has been done and said verbally in the pre-"sence of a public officer and what he himself does upon the "occasion. It is a species of inquisition of office." (2 Bouv. 300.

It is a peculiarity of the French and the Spanish law, that the written declaration of an officer, in certain matters, shall, when in proper form, be an authentic act, and equivalent to the acts of the parties themselves. Under that law, in certain cases, as in the case of vacant successions, when property was sold by the Judge or Clerk, his act of sale would be evidence of title. Whether it could ever, unsigned by the parties, create a mortgage, is another question. It is believed it could not. But it is unnecessary to insist on this, as the point is clear on other grounds.

This act of sale was made on the 1st December, 1840. At that time, whatever might have been his power before, the

Probate Judge had no authority to sell the property of an estate or to make any official declaration concerning a sale. The Act "regulating the duties of Probate Courts and the settlement of successions" was approved 5th February, 1840, and went into effect months before this sale was made. That Act makes it the duty of the executor or administrator himself to sell the property.

But it may be said that this Act was only to govern in reference to successions opened after its passage. From the time of its passage, it was received as the rule to regulate every matter connected with successions; under it, all estates were settled. It would have been impossible, indeed, to settle an estate under any other law, for none remained in force after the repeal by this Act of all former laws conflicting with it. The Act covered the whole ground, and this repeal was equivalent to a repeal of all laws on the subject. Such a construction would be contrary to universal opinion, contrary to the opinion of the Courts which have invariably taken this Act as the law, and would annul the proceeding of the Probrate Courts in reference to all old successions.

The executor or administrator, then, was to sell. He was the agent appointed by the law for the purpose. If a mortgage was to be taken, he was the person to take it. The Act prescribes no form of mortgage. The general law upon the subject controls. Whatever would be good as a mortgage between others, would be good as a mortgage from a purchaser of property of an estate to the executor or adminirtrator who represented the estate.

A mortgage is a conveyance. It must be in writing and signed and sealed by the grantor. The statutes require this, and that it shall be recorded in order to affect third persons. (Act May 15th, 1838; Sec. 4, 13, Act February 5th, 1840.)

It may be urged that the acceptance of the instrument estops Hall from denying the existence of the mortgage. This proposition could have but little force, even in a controversy between Wm. P. Scott and W. D. C. Hall, but none whatever

between the plaintiff and Hall.   If the acceptance could operate as an estoppel against him, then the act of sale must equally bind her, for the estoppel must be mutual.   But she is no party to it, nor is the estate she represents.   Had she sued to recover the slaves, the act of sale could never have stood in the way.   As to the other defendants, still more must be alleged.   It must be averred not only that Hall signed, sealed and delivered a deed of mortgage, but that it was recorded, or these defendants had actual notice.   There is no such averment.   It is Wm. P. Scott's conveyance to Hall, which is said to have been recorded.   Even if Hall were estopped to deny the existence of the mortgage, these parties are not.   If it binds him, it could only do so by virtue of his acceptance of the process verbal, for he made no mortgage by any deed to the plaintiff; nor is he charged with having done so.   Now the recording of a deed or actual notice is effectual as to third parties, because it shows them that the grantor has no interest to convey.   It puts them on their guard.   The record of this paper could not show this, because it could not be the paper itself which creates the mortgage, but the acceptance by Hall.   Third parties seeing this record would only know the fact that Wm. P. Scott made a conveyance to Hall; they would not know that Hall had accepted it. To be notice to them, the acceptance would have to be recorded.   This could not be, unless it was in writing signed and sealed by Hall.   This might be a mortgage, for it would be a deed signed and sealed.

The statutes on the subject of the recording of deeds put this in a clear light.   They say that all deeds of trust and mortgages shall be void, &c., unless recorded.   How are they to be recorded ?   On the acknowledgment of the party, or proof of his signature.   Here, Hall is the party who is supposed to create the mortgage, yet it is not averred that he ever signed it.   But William P. Scott signs a paper; it is recorded on his acknowledgment or proof of his signature; and this record is to be effectual notice to the world of what deeds

Hall has made. The declaration of a stranger that Hall has made a mortgage, being recorded, is to be as effectual a notice as the record of the deed of mortgage itself.

After these demurrers were sustained, leave was given to the plaintiff to amend. To this the defendants excepted. Amendments are permitted, under the discretion of the Court, at any time before the parties announce themselves ready for trial, and not thereafter. (Sec. 34, Act to regulate proceedings in the District Court.)

It does not appear, in this case, that the parties formally and in set terms, announced themselves ready for trial; but it does appear that they proceeded to trial, without objection, upon a demurrer which went to the whole ground of action, all the preliminary questions having been first disposed of. A trial may be either of law or fact. The statute covers both. When parties announce themselves ready for trial, upon a general demurrer, and the demurrer is sustained, does not the statute prohibit an amendment? If so, the plaintiff here should not have been allowed to amend, for actually entering upon the trial, was the most expressive kind of announcement that she was ready for trial. She was "estopped" by her act from saying she was not ready.

The amendment was permitted and made and the defendants insisted on their former demurrers as still applicable. They were overruled and to this the defendants excepted.

Let us see how much the case was bettered by the amendment. It represents that the defendants had notice and were fully informed of the petitioner's lien or mortgage, which is described in her original and amended petitions, previous to the time they became the mortgagees or purchasers of the property from Hall.

The ground of objection to the original petition was that it did not show the existence of any mortgage—that the paper referred to, executed by Wm. P. Scott, could not create a mortgage even as against Hall, much less against the other defendants; that it was not alleged that the mortgage was recorded,

or that the defendants had notice; but only that the so called process verbal was recorded. The amendment alleges the existence of no mortgage. If the original petition was defective in this, it continued so; for the defect is uncured. If the paper, executed by W. T. Scott, was not a mortgage, as it was set forth in the original petition, it was still not shown to be a mortgage; for it is noticed in the amendment, that this defect is uncured. If there was no allegation of notice of the mortgage in the original petition, there is still none; for the amendment only alleges notice of the mortgage or lien described in the original petition, which describes none; and this defect too is uncured.

The point in controversy is whether Wm. P. Scott's process verbal could create a mortgage against these defendants. The existence of this paper is stated in the original petition and it is there averred to have been recorded. Its existence and its being on record were admitted by the demurrer which was sustained. The admission of the demurrer that this paper had been recorded was an admission of the defendants that they had had notice of it. The allegation that they had such notice is the only one contained in the amended petition, and it is but the allegation of a fact which had been before alleged and which had been admitted by the demurrer. The notice which the demurrer insists is not alleged, is notice of a mortgage; not notice of the process verbal, for that is averred to have been recorded.

V. On the trial the plaintiff introduced a witness who stated that there was a process verbal or act of sale of the slaves described in the petition, in which was retained a lien or mortgage on said slaves to secure the purchase money, which process verbal or act of sale was executed by Wm. P. Scott, Chief Justice and *ex officio* Judge of Probate of Brazoria county and witnessed by him, and that said instrument was delivered to W. D. C. Hall. The plaintiff also proved notice to Hall to produce this paper, and then offered to introduce a paper which the witness said he believed to be a copy. Its intro-

duction was objected to, and the objection sustained. The original was then produced by Hall, under the notice; offered in evidence by the plaintiff; objected to by the defendants; and ruled out by the Court. The ruling of the Court in this matter is the ground of one of the plaintiff's bills of exceptions, which sets forth the facts and contains copies of the two papers offered. The first of these was a copy of the second. Was this latter proper evidence?

This paper goes to prove only the fact that Wm. P. Scott had conveyed certain slaves to W. D. C. Hall. Had these slaves been the property of Wm. P. Scott, in any controversy between him and Hall, it might have been admissible to prove the sale. Even under these circumstances, in such a controversy, for the reasons before given, drawn from the nature of a mortgage and the provisions of our statutes concerning such an instrument, it could not create a mortgage. It may be remarked further that it does not profess to do so. It only conveys "subject to a lien." It does not profess to be itself the evidence of that lien. But Scott is no party to this suit, and it is an immaterial fact whether he ever did or did not sell such property to Hall. The paper shows that Scott did not own the slaves; that they belonged to the estate of Wm. S. Hall, the plaintiff's intestate; but that Scott, in some capacity or other, undertook to convey them to Hall. Now if this was an official act, it was a nullity and passed no title to Hall, because Scott as Chief Justice, &c., had no authority to convey. If it was not an official act, it is still a nullity; for it is the conveyance by one person, of the property of another. In neither case could it give to Hall the interest of the estate in the property, nor make him in any manner liable to the representative of the estate. If Hall could have incurred any liability by the acceptance of this paper, it would have been a liability to Scott; not to the plaintiff. She is a stranger to it.

The plaintiff seems to have become satisfied that Scott, in his capacity of Judge, had not power to make this sale. She therefore files an amended petition in which she says that af-

ter all, it was not as Judge that he made the sale, but as her agent—" for her and under her authority." This assertion does not at all agree with the terms of the process verbal, nor does Scott appear to have been aware that he was acting in that capacity. But if it were so, the deed is the deed of Scott, not of the plaintiff. To be her deed, it must be executed in her name. (7 Mass. R. 14; 16 Id. 42.) It is almost useless to cite authority to prove, that to bind the principal, the deed must be executed in his name by the attorney.

There is another objection to this paper as evidence, apart from its want of materiality. The second amended petition says that Wm. P. Scott made the sale for the plaintiff and under her authority. Now it is evident from the perusal of this paper that it was intended to be an official act. It states throughout, that Wm. P. Scott, Chief Justice and *ex officio* Probate Judge, did so and so. Wm. P. Scott signs it as Chief Justice, &c., giving himself his full official title, and it is sealed, not with the private seal of Wm. P. Scott, but with the seal of the Probate Court. There is no recognition of any agency in any word of it. It was therefore inadmissible, because it was not the paper described.

*Jones & Ballinger*, also, for appellees.

LIPSCOMB, J. This suit was brought to recover the amount of a note given by the defendant to the plaintiff, on the second day of December, A. D., 1840, and to enforce a lien for the payment of the note aforesaid, on certain negroes named in the petition, for the purchase of which the note was given. There was a general demurrer filed, to the petition, which was sustained by the Court; which is assigned as the first error, by the counsel for the appellant.

To enable us to determine whether the demurrer was correctly sustained, we will recite briefly the substance of the petition. It alleges that Warren D. C. Hall is indebted to her

68

in the sum of nine thousand six hundred and forty-five dollars, with legal interest from the second day of December, A. D., 1841 ; for that the said Hall, with one Edwin Waller, who is not sued, on the second day of December, A. D., 1840, ex-executed and delivered to petitioner their joint and several obligation, by which they, or either of them, promised twelve months after date to pay to petitioner, administratrix of William S. Hall, dec'd, or order, the aforesaid sum, which, though due, has not been paid ; which debt was contracted for certain slaves which belonged to the estate of William S. Hall, petitioner's intestate, which negroes were purchased by Warren D. C. Hall, at a public sale of the property of said estate, made at the Court House in Brazoria, on the first day of December, 1840, by William P. Scott, Judge of Probate for said county ; and a lien or mortgage was retained on said negro slaves, to secure the payment of the aforesaid debt, which will more fully appear by a reference to the process verbal and act of sale, executed by the said William P. Scott, Judge as aforesaid, in favor of said Warren D. C. Hall, which was delivered to the said Warren D. C. Hall, and is recorded in the Recorder's office of Brazoria county. Then follow the names and description of the negroes, all of which are named in the process verbal and act of sale, and a lien or mortgage was retained on them to secure the payment of the said debt. She prays for citation to the said Warren D. C. Hall ; that she have judgment against him for her debt, interest and costs ; that the mortgage on the said negroes be foreclosed accordingly to law ; and that the negroes and their increase be decreed to be sold in satisfaction of the said debt. She then alleges that several of the negroes, giving their names, had been mortgaged by said Hall subsequent to her mortgage on them ; and that he had sold some of them ; she fears that all or most of the negroes so mortgaged to her, will be removed from the jurisdiction of the Court. She prays a sequestration.

The first objection, in sustaining the demurrer to the petition, is the want of proper parties to it. It is an acknowledg-

ed rule of equity jurisprudence, that all persons who may be affected by the decree, should be made parties. Therefore all persons having an interest in the equity of redemption, should be made parties to a bill for a foreclosure, and *a fortiori* to a bill to sell the mortgaged property ; and hence the general, though not universal rule is, that all incumbrancers, (as well as the mortgagor,) should be made parties, if not as indispensable, at least as proper parties, to such a bill, whether they are prior or subsequent incumbrancers. If, indeed, such incumbrancers, whether prior or subsequent, are not made parties, the decree of foreclosure does not bind them, as also a decree of sale would not. The prior incumbrancers are not bound, because their rights are paramount to those of the foreclosing party. The subsequent incumbrancers are not bound, because their interests would otherwise be concluded, without any opportunity to assert or protect them. (Story's Eq. Pl. Sec. 193.) The same learned author, after showing in his notes on the preceding Section, how very unsettled the authorities prove the rule to be, as to the necessity of making all such parties in interest, parties to the bill, states that the cases in the text in 3 Vezey, 315 ; 11 Wheat. 304 ; 3 Johns. Ch. 459, seem to treat all incumbrancers as necessary parties, and adds : " Perhaps all the authorities may be reconciled, by " considering all incumbrancers as proper parties, though not " in all cases indispensable." I have no doubt, but if time permitted, an investigation of all the best authorities would lead to the conclusion, that as a general rule, they were required to be made parties ; the rule, however, admitting in some cases, under their own peculiar circumstances, of an exception. In cases of a mortgage of real estate, in foreclosing the mortgage, it might well be supposed that a prior incumbrancer need not, as indispensable, be made a party to the bill to foreclose ; because it is not conceived how his interest would be prejudicially affected, his right being superior to that of the mortgagee ; whilst the interest of a subsequent incumbrancer would sometimes suffer materially, by not having

an opportunity to protect his rights, although it might be true that he would not be concluded by the foreclosure, to which he was not a party. He would at least be exposed to an original suit, to obtain the right to redeem, and pay off the prior mortgage. And this would generally be very onerous to him. Again, as in the case before us, of personal property, he might be deprived of the possession and use of the property, before having an opportunity to pay off the mortgage, or to defend his possession, by showing that the money secured to be paid by the mortgage, had been paid or part thereof, and his readiness to pay the balance, or that there was some legal objection to the first mortgagee's right to foreclose or to sell the property. The subsequent purchaser or mortgagee could at least set up, in his defence, all the legal or equitable defences, that the mortgagor himself could have offered.

In this case, the plaintiff had disturbed the rights of the purchasers and subsequent mortgagees, at the very outset of her suit, in a way that she could not have done had it been a mortgage of real estate ; and this without making them parties to the suit. She had prayed in her petition for a sequestration of the negroes, so purchased by them, and had obtained, on her petition, the writ of sequestration. Again, it has been the uniform and most cherished rule of this Court, to prevent a multiplicity of actions, and to settle all the rights connected with the same subject matter of litigation, in the same suit. It would, therefore, be a case of very peculiar circumstances, where we would prevent a known subsequent incumbrancer to be dispensed with as a party ; more particularly if the petition was for the foreclosure of a mortgage or sale of personal property.

In this case, the plaintiff knew of the subsequent purchases and mortgages, because she alleged it in her petition. She should then have made them parties, and by so doing saved the circuity of action. It is the practice, sustained by respectable authority, to require the mortgagee to propound questions to the mortgagor, in the bill for a foreclosure where

Hall v. Hall.

the incumbrancers are not known, calling upon him, for information of the existence of such incumbrancers; and if any, to ask leave to make them parties defendants. (See Story, Eq. Pl.)

The demurrer was, then, in my judgment, well taken to só much of the petition as claimed a foreclosure of the mortgage. It did not go to the claim of judgment on the note; and if the petition had not amended after the demurrer was sustained, she could have had the judgment on the note, if no other defence had been offered.

But, to my mind, there is another more formidable objection to the petition, for the foreclosure and sale of the slaves, than the one just discussed; that is, a total failure of alleging in the petition, any mortgage or lien or sale of the property, known to the law in relation to the sales of the property of a deceased person, or regulating mortgages, and the manner of foreclosing them, or of having them recorded. The acts and doings of the Judge of the Probate Court were not merely void, but were absolute nullities, and could create no lien; nor could the fact of their being spread upon the record books of the Recorder of Brazoria, confer upon them any validity, as a lien, nor as notice to subsequent purchasers or mortgagees. The so called process verbal and act of sale of the Probate Judge, being unknown to the law in force at the time and for a long time before, their record, like the originals, was mere waste paper and ink. So much of the petition, then, as asked a foreclosure of the mortgage and a sale of the slaves under the supposed specific lien, was so substantially bad and fatally defective, that it was bad on demurrer or in arrest of judgment, or upon error assigned, in this Court, as it affords no basis for a decree of foreclosure or of sale.

The 22d Section of the Act of 5th February, 1840, (Art. 1016, Hart. Dig.,) directs how sales shall be made, of the property of an estate, that it shall be by the executor or administrator. Section 29 of the same Act, (Hart. Dig. Art. 1023,) directs, "That every executor or administrator is bound, within three

" months after his appointment, to petition the Probate Court,
" granting letters testamentary or administration, for the sale of
" all the perishable property belonging to the succession, and
" all or such portion of the other personal property, except
" slaves, as may be shown to the Court to be necessary for the
" payment of debts against said estate ; and in case, or if on
" further information, he finds that the proceeds of the sale of
" the personal property will not be sufficient for the payment
" of the said debts, he shall then, within six months after his
" appointment, or as soon as he ascertains the said deficiency,
" petition the Probate Court for the sale of slaves and real
" estate of the decedent, or so much thereof as may be neces-
" sary for the payment of the said debts ; and the said Court,
" on full and satisfactory proof of the existence of debts, and
" the necessity of the sale, shall order the same on cash or
" credit as may be most advantageous to said estate, or as the
" nature of the claims against said estate may require." Sec-
tion 56 of the same Act, (Art. 1039, Hart. Dig.,) provides,
" That in all cases where property is sold at a sale of a suc-
" cession of any deceased person, or of the property of min-
" ors, idots, lunatics and persons *non compotes mentis*, the pro-
" perty of the purchaser, or his securities, may be seized and
" sold on execution, for cash, to the highest bidder, without
" the necessity of appraisement."

These are the provisions of the laws regulating the duties of
administrators, so far as they are material to the subject we have
been investigating. No lien or mortgage is provided for by
law ; but the Section last cited seems to confine the security
to personal, as it gives the remedy against the purchaser
and his securities, by the sale of their property in general, not
the property so purchased at the administrator's sale, without
appraisement.

After the demurrer was sustained, the plaintiff amended her
petition, only so far as to bring in as defendants the subse-
quent incumbrancers, the purchasers and mortgagees, but left
the petition still obnoxious to the objection, that it contained no

ground for the foreclosure of a mortgage, or the sale of the particular property; that it presented no mortgage or lien known to the laws of the forum. A mortgage must be constituted by the Act of a mortgagor, and it must be in writing acknowledged by him or proven, to admit it to record. Had the purchaser at the sale of an administratrix, chosen to give, as security, a mortgage on the property purchased, and that in writing executed by himself, it would have been a valid mortgage, although the 56th Section of the Act repudiates the necessity or legal obligation, on the part of the administratrix, at that time, to exact such security, and a mortgage so taken, acknowledged and recorded, would have been notice to subsequent incumbrancers, and would have been available, if it had not been recorded, against those who had actual notice of such mortgage; but the so called process verbal and act of sale by the Probate Judge, was not the mortgage of Hall, and created no lien. Therefore its being recorded could not affect the interest of any one, nor could actual notice have had more effect. If this ground had been taken, in adjudicating on the demurrer, it would have been conclusive against the application for a foreclosure of the supposed mortgage and the order of sale; and there would have been no necessity or propriety in bringing purchasers and mortgagees under Hall, in as parties; because their interest in the suit was based upon the hypothesis that their mortgagor or vendor had given a previous lien on the property conveyed to them, and the suit would have been simply against Hall, on his note given to the administratrix.

The defendants, brought in under the amendment, after the demurrer was sustained, plead the statute of limitations, which was ruled out by the Court, on the motion of the plaintiff. On the sufficiency of this plea, we have been furnished by the counsel for the appellees, an able, and we may say a conclusive argument. Why the jury were not permitted to pass upon that plea, we acknowledge our inability to perceive. But, in the state of the record, we are not called upon to discuss the ruling of the Court, in relation to that defence; for,

although the plea was ruled out, the verdict and judgment was in favor of those defendants, and they are not the appellants ; and from the view we take of the whole case, there will be no necessity of discussing that question, by way of instruction to the Court below. If we had come to the conclusion that the judgment in this case ought to be reversed, we would have felt bound to decide upon the correctness of the ruling of the Court below, in excluding the plea of the statute of limitations.

But, to return to the assignments of error. The appellant complains that she was not permitted to give this process verbal of the Probate Judge, already commented on, in evidence to the jury, in support of a lien or mortgage on the negroes ; not permitted to prove notice of it; not permitted to amend and allege that the Probate Judge was her agent. In none of these rulings can we perceive that the Court erred. The notice of the writing, called a process verbal, as we have shown, could not affect any rights of the parties ; and whether it was to be regarded as the voluntary, officious act of the Probate Judge, or as the act of the agent of the administratrix, it created no lien, and was properly excluded from the jury. The construction of written evidence properly belonged to the Judge; and we believe that he properly excluded it. And it would have made no difference, had there been an averment in the petition, that the paper was made as the agent of the administratrix. The Judge would still have been called upon to give it a legal construction ; and he rightly adjudged that it was not evidence of a lien or mortgage.

There was no evidence before the jury to establish the lien; and none could have been received, under the petition, to give validity to the instrument alleged to be a mortgage; and consequently the jury had nothing before them but the evidence of the indebtedness of Hall. They found a verdict against him, on that evidence, and found in favor of the other defendants. We find no error in the judgment in favor of the defendants who were brought in as purchasers under the defendant Hall.

Hall has not appealed from the judgment against him, and consequently we cannot revise the correctness of that judgment; but we see no impropriety in giving a passing notice of a defence offered by him, and ruled out by the Court. And the fact that the decisions of this Court were probably misunderstood, would require some remarks on the defence offered, to remove that misconception. We have held, that in an action brought by an administrator, the defendant cannot be permitted to plead in off-set a debt that had been allowed by the administrator and approved by the Probate Judge, and assigned to the defendant before the commencement of the suit. This as a general rule is correct, as it might embarrass the settlement of estates, and lead to difficult investigations, ás to what proportion of the claims against an estate could be paid out of the assets to be administered. We never, however, intended to say that this rule would admit of no exceptions. There is no question that sometimes cases under peculiar circumstances would arise, that would render the interposition of the equitable jurisdiction of the District Court absolutely necessary to prevent great hardship and oppression. A man may be the sole creditor of an estate, and his claim may be allowed by the administrator and approved by the Probate Judge, and he may afterwards become the debtor; would it be consistent with equity, to force payment of his debt, perhaps at a great sacrifice, when the money, so raised by him, would of right be paid back to him, as soon as paid to the administrator. If so, a sacrifice would be required, without any advantage to the estate, or to any other person, as creditor of the estate. The plea of Hall, in this case, was in the nature of a cross petition. He admits his indebtedness to the estate, on the note payable to the administratrix; alleges that he is the creditor of the estate, on claims duly presented and allowed by the administratrix, approved by the Probate Judge, to an amount four times the amount for which he has been sued; that he is almost the only creditor of the estate, he offers to pay whatever balance there should be against him, if any,

69

after receiving credit for what was justly due to him from the estate; he alleges that he had often urged the administratrix to settlement, and had not been able to procure a settlement, and he prays that the Court will take cognizance of the matter, and require the administratrix to make a settlement. His condition was certainly very peculiar. If he had applied to the Probate Court for an order of payment of his claim, the administratrix may perhaps reply, no assets in hand excepting the debt due the estate from him, which cannot be available until the money is paid by him. He is not able to raise the money because he cannot collect what is due from the estate. Shall the administratrix be permitted to sue him, obtain judgment and sacrifice his property by a sale; all for the purpose of paying the same money afterwards to him? This would not only be absurd, but would be wantonly oppressive.

Another aspect may be presented, that would as clearly manifest the necessity for the interposition of the District Court, when, from the organization and powers of the Probate Court, the relief could not be had. Suppose that Hall had in truth mortgaged these negroes for the purchase of which his indebtedness to the estate had accrued, to the administratrix, to secure the payment of the indebtedness, and he had afterwards sold or mortgaged them to the other defendants, as he had a right to do, and such vendee or mortgagee would have a clear title encumbered by the first mortgage only. If a decree of foreclosure or sale should be sought by the first mortgagee, the subsequent purchaser or mortgagee could successfully resist such suit, by showing that the money had been paid by the first mortgagor, and the lien extinguished. Or, if they could show that there was a fund in the hands of the administratrix belonging to their vendor or mortgagor, it would scarcely be doubted that they would have an equitable right to have that fund appropriated to the extinguishment of the first lien, and thereby remove the incumbrance from their own purchase. This they could have done by a separate petition, or could have claimed the same on be-

coming parties defendants, on the petition to foreclose the first mortgage. And when a distinction is made between equity and Common Law jurisdiction, although Hall might not have been able, at Common Law, to resist the judgment against him, in a suit brought on his bond or note, he could have had relief by filing a bill in chancery; and if there was money in the hands of the administratrix, belonging to him, a Court of equity would have decreed its appropriation to the extinguishment of the lien. We have before disclaimed any intention to adjudicate upon the question; because Hall has not appealed. We, for the purpose already expressed, assert the jurisdiction of the District Court, on the presentation of a proper case, to take it into its own hands, from the Probate Court. And we claim this right and authority, not from any special legislation, but upon the broad ground of the general equity jurisdiction of the District Court. It should not be exercised, though, unless it was in a case that called for it, on the ground that adequate relief could not be obtained in the Probate Court. The judgment of the Court below is affirmed.

Judgment affirmed.

WHEELER, J. The Reporter will note, that not having been present at the argument, I gave no opinion.