## JACKSON et al. v. FIRST NAT. BANK OF SAN ANGELO.

### No. 7555.

Court of Civil Appeals of Texas. Austin.
March 18, 1931.

Rehearing Denied April 8, 1931.

Collins, Jackson & Snodgrass, of San Angelo, and Earl D. Scott, of Jourdanton, for appellants.

Upton & Upton, of San Angelo, for appellee.

BLAIR, J.

This appeal is from an order overruling the pleas of privilege in statutory form of appellants, A. M. Peeler and Roy Jackson, to be sued in Webb county, the county of their residence or domicile. Appellee, the First National Bank of San Angelo, Tex., filed the suit in the district court of Tom Green county, alleging that the defendant Howard P. Miller, was a resident of San Antonio, Bexar county; that defendant Clay Mann was a resident of Texas, but now located in Oklahoma City, Okl.; that defendant A. M. Peeler was a resident of Bexar and Atascosa counties; and that defendant Roy Jackson was a resident of Webb county; that Howard P. Miller executed to appellee his note for $10,000, dated October 10, 1929, and payable to the order of appellee at San Angelo, Tex., 180 days after date, and that same was past due and unpaid; that, at the time of the execution of the note, Miller executed his chattel mortgage upon certain goats, described by age and brand, upon certain cows and bulls, described by age and brand, and upon 412 head of steers, one and two years old, and branded Q on left loin or hip; that, prior to the execution of the note and mortgage, Peeler and Jackson sold to Miller the 412 head of steers described, and agreed to deliver the same free of any liens; that Miller and Mann negotiated with appellee bank for the loan and agreed to execute the note and mortgage, and appellee agreed to make the loan subject to an inspection of the live stock; that, just prior to the date of the note and mortgage, appellee sent Will C. Jones to inspect the live stock; that he inquired of appellant Roy Jackson as to the whereabouts of Howard P. Miller's steers, and informed him that he wished to inspect them for the purpose of making a loan; that Jackson assisted him in making the inspection, pointing out from other cattle the cattle that belonged to Miller, and that Jackson never at any time asserted any claim, right, title, or interest in the cattle or of their possession during the inspection of them; that the said Jones made inquiry of appellant A. M. Peeler as to the number, kind, and location of the cattle owned by Miller; that Peeler told him that these 412 head of steers belonged to Miller, and that Peeler never claimed at any time that these steers belonged to him or to Jackson, or to both of them; and that, relying upon these representations of Peeler and Jackson, Jones reported a favorable inspection of the cattle, and appellee, acting upon this information, made the loan in suit. Appellee also alleged that Peeler and Jackson were partners in the cattle; that, if not partners, they were jointly interested in certain ranch enterprises; that the said 412 steers were in their possession; and that they were claiming some right, title, or interest in same, but that, whatever their claim be, it was inferior to the claim and the mortgage lien of appellee; and appellee prayed for judgment against Miller on the note and for foreclosure of the chattel mortgage as against all defendants.

In addition to alleging the above facts in its controverting plea to the pleas of privilege, appellee also alleged, as follows: "That at the date of the execution of said note and

said mortgage the defendant, Howard P. Miller, was the owner of said live stock and had a right to execute a valid mortgage and lien upon same to secure the payment of said note; and that at the time of the institution of this suit, and the time of the filing of the pleas of privilege herein, and at this time, said defendants, Jackson and Peeler, are asserting some right, title or interest in and to the live stock, the nature of which and the extent of which is unknown to plaintiff, but whatever interest they have or assert is inferior to the claim and lien of the plaintiff herein to said live stock."

On the trial of the pleas of privilege, the trial court sustained venue in Tom Green county under subdivision 5 of article 1995, which provides that, "if a person has contracted in writing to perform an obligation in a particular county, suit may be brought * * * in such county" on the obligation; and under subdivision 29a, which provides that, "whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto."

This appeal is predicated upon the following sole proposition: "Since none of the defendants reside in Tom Green County, Texas, and since the alleged venue in Tom Green County must be predicated solely upon the written promise of Miller to pay the note in Tom Green County, it was necessary for plaintiff to plead and prove prima facie that appellants were necessary parties to the suit against Miller in order to sustain venue in such County, and since the proof not only failed to show appellants to be necessary parties to such action but on the other hand conclusively established the fact that appellants were not necessary parties to such action, it was error for the lower court to overrule the pleas of privilege."

Appellee introduced the note and mortgage on the hearing of the pleas of privilege. Roy Jackson, called as a witness by appellee, testified Peeler had written him that he had contracted to sell the steers involved in this suit to Miller; that Miller and Will C. Jones introduced themselves to him and wanted to see the cattle, and that he told them the cattle were in the trap; a Mexican got up some horses and Jackson went with and showed Jones the cattle which are now in the possession of himself and Peeler. Among other things, Jackson testified as follows: "I am one of the defendants in this case, and am acquainted with the 412 head of steers involved here. They are now on the Peeler Ranch in Atascosa County, and are in the possession of Mr. Peeler; Peeler, Gouger and Jackson claim the cattle."

Jackson further testified: "We were to pasture the cattle there. He told me that day he had paid Mr. Peeler pasturage on these cattle; and that caused me to believe that Peeler might have delivered the cattle; but I didn't know."

Appellant Peeler testified as follows: "I contracted these steers to Mr. Miller on September 22 at $46.00 a head with a 10% cut of $36.00, the cattle to be delivered and paid for as soon as they could be cleaned. The cattle had ticks on them; and they were to be paid for at the shipping pens, free of ticks. We had a short memorandum of the trade, which I wrote and gave to Mr. Miller. Mr. Miller gave me a check for $1,000.00 as part payment; and I wrote him a receipt. Mr. Miller said he had a pasture above San Antonio, and was going to ship the cattle to that pasture; and we were to clean them and deliver them to him so they would stand inspection to go into clean territory. Later on he decided to leave the cattle and not move them; and I got him some grass with one of my neighbors; and he was to receive the cattle and pay for them on the 15th of October, but didn't do that."

On cross-examination, Mr. Peeler testified: "Mr. Jones was with Mr. Miller; and he asked me how many of those cattle there were; and I told him there were about 400. I suppose the cattle were sold to Miller. That is what we were talking about. I didn't say that there were about 400 in there that belonged to Miller; but I said there were about 400 steers, and I meant 400 we had sold to Miller. * * * These were the steers I was talking about that I had contracted to Mr. Miller."

The evidence also showed that Miller paid $1,000 of the purchase price of the cattle to Peeler, and that the note and mortgage were payable and enforceable by their express terms in Tom Green county. By this evidence appellee bank established a cause of action on the note and mortgage which was maintainable against Miller in Tom Green county, and also established a prima facie cause of action of estoppel against Peeler and Jackson to deny Miller's title to the cattle, because Miller thereafter failed to carry out his promise to pay the entire purchase price, or to now assert any claim or lien superior to appellee's mortgage lien on the cattle; and it necessarily follows from these facts and conclusions that appellants Peeler and Jackson were necessary parties to the foreclosure suit.

In McLeroy v. Thrift (Tex. Civ. App.) 22 S.W.(2d) 497, 498, it was held, as follows: "Second, that so regarding the action as concerns the appellant, he—claiming an adverse interest in property on which a mortgage lien was sought to be foreclosed against another, along with himself—should be held to be a necessary party to the suit under subdivision

29a, supra, on the view that only in that way would the plaintiff be afforded adequate relief; Townes on Texas Pleading, 2d Edition, p. 259, subd. —; Boydston v. Morris, 71 Tex. 697, 10 S. W. 331; Lind et ux. v. Merchants' State Bank & Trust Co. (Tex. Civ. App.) 16 S.W.(2d) 385; Carter v. Attoway, 46 Tex. 108; First State Bank v. Hill (Tex. Civ. App.) 2 S.W.(2d) 1023; Hall v. Hall, 11 Tex. 526; Templeman v. Gresham, 61 Tex. 50."

See, also, Lind et ux. v. Merchants' State Bank & Trust Co. (Tex. Civ. App.) 16 S.W. (2d) 385; First State Bank of Crowell et al. v. Hill et al. (Tex. Civ. App.) 2 S.W.(2d) 1023.

Appellants in effect concede that, if appellee made out a prima facie case against them, the above quotation from the McLeroy v. Thrift Case is "directly contrary to our (appellants') contentions," except that the residence of the maker of the note in that case was in the county of the suit. But the residence of the maker of the note is not material under subdivision 29a, supra, which authorizes the maintaining of a suit in the county where "such suit is lawfully maintainable" against one or more of the defendants sued. This court decided this exact question in the case of Demmer v. Lampasas Auto Co., 34 S.W.(2d) 421. There it was held that, although neither of the defendants resided in the county where the note and mortgage on an automobile in suit were payable and enforceable, still the suit was maintainable there against the maker of the note under its terms and that the suit was also maintainable there against all defendants who claimed any interest in the automobile, so that a common judgment for foreclosure of the mortgage could be had against all defendants, and in order to afford the plaintiff full and adequate relief.

The judgment of the trial court will be affirmed.

Affirmed.